**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CAMBRIDGE MUTUAL FIRE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | No. 19 C 7065 |
| v. | ) ) | Judge Sara L. Ellis |
| SANDRA J. SHELTON, | ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Cambridge Mutual Fire Insurance Company ("Cambridge Mutual") brings this lawsuit pursuant to 28 U.S.C. §§ 2201 and 2202 against a policyholder, Sandra J. Shelton, seeking a declaratory judgment that it has no duty to defend or indemnify Shelton in an underlying state court lawsuit. The underlying lawsuit, brought by Zofia and Janusz Iwanicki ("Claimants") sought tort damages for Shelton's harassing behavior and resulted in a consent judgment for Claimants in the amount of $1.3 million dollars. *Iwanicki v. Shelton*, No. 2018 L 004152 (Circuit Court of Cook County). Cambridge Mutual now moves for summary judgment. Because Shelton did not comply with the insurance policy's notice provision, which was a condition precedent to coverage, the Court grants Cambridge Mutual's motion for summary judgment.

## BACKGROUND[1]

Shelton owned a rental property at 1508 North State Parkway in Chicago, Illinois. Zofia Iwanicki worked for Shelton, both individually and for the rental business, cleaning the common areas of the building. The underlying lawsuit alleges that Iwanicki quit on July 8, 2017, after which Shelton and her daughter began harassing Iwanicki and her husband by: accusing Iwanicki of stealing from Shelton; calling and visiting Iwanicki's neighbors, relatives, other employers, and priest to report the same; repeatedly calling Iwanicki and her husband; posting signs; and seeking emergency no-contact orders based on lies. Iwanicki alleged that the harassment continued through November 2017.

Claimants Iwanicki and her husband filed suit against Shelton and her daughter in the Circuit Court of Cook County on April 24, 2018, seeking damages for torts including defamation and intentional infliction of emotional distress. Shelton first became aware of Claimant's lawsuit in April 2018 (around the time it was filed) when she received something in the mail. Shelton waived service of the complaint in July 2018.

Shelton purchased a Cambridge Mutual Businessowners Liability Insurance and Excess Liability Insurance policy (the "Policy"), effective for the period September 9, 2016, to September 9, 2017 (Policy No. SBP1802026). The Policy provides for "Business Liability" coverage, with the following language:

> We will pay those sums that the insured becomes legally obligated
> to pay as damages because of "bodily injury"; "property damage",

---

[1] The Court derives the facts in this section from the Joint Statement of Undisputed Material Facts and Cambridge Mutual's Response to Shelton's L.R. 56.1(a)(2) Statement of Additional Material Facts. To the extent Shelton submitted additional facts that Cambridge Mutual disputes and that contradict her prior sworn testimony, the Court has disregarded those facts. *See James v. Hale*, 959 F.3d 307, 315–16 (7th Cir. 2020) (court should not consider self-serving affidavits that contradict prior sworn testimony); *Dunn v. Menard, Inc.*, 880 F.3d 899, 912 (7th Cir. 2018) (court did not abuse its discretion by refusing to consider summary judgment affidavit that contradicted prior sworn testimony). The Court takes all facts in the light most favorable to Shelton, the non-movant.

> "personal injury" or "advertising injury" to which this insurance
> applies.  We will have the right and duty to defend the insured
> against any "suit" seeking those damages.  However, we will have
> no duty to defend the insured against any "suit" seeking damages
> for "bodily injury"; "property injury" to which this insurance does
> not apply.  We may at our discretion, investigate any "occurrence"
> and settle any claim or "suit" that may result. . . .

Doc. 75-2 ¶ 34.  The Policy further states that it applies to "'Personal injury' caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you." *Id.*  The insured under the Policy is defined as an "individual, you and your spouse, are insureds, but only with respect to the conduct of a business of which you are the sole owner." *Id.* ¶ 35.  The Policy also contains an "Employment-Related Practices Exclusion" that provides, in relevant part:

> This insurance does not apply to "bodily injury" or "personal
> injury" arising out of any:
>
> a. Refusal to employ;
>
> b. Termination of employment;
>
> c. Coercion, demotion, evaluation, reassignment, discipline,
>    defamation, harassment, humiliation, discrimination or
>    other employment-related practices, policies, acts or
>    omissions; or
>
> d. Consequential "bodily injury" or "personal injury" as a
>    result of a. through c. above.

*Id.* ¶ 36.

The Policy also contains the following notice provision as a general condition:

> a. You must see to it that we are notified as soon as
>    practicable of an "occurrence" or an offense which may
>    result in a claim.  To the extent possible, notice should
>    include:
>
>    (1) How, when and where the "occurrence" or offense
>        took place

3

      (2)     The nature and location of any injury or damage arising out of the "occurrence" or offense.

    b.   If a claim is made or "suit" is brought against any insured, you must:

      (1)     Immediately record the specifics of the claim or "suit" and the date received; and

      (2)     Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    c.   You and any other involved insured must:

      (1)     Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit;"

      (2)     Authorize us to obtain records and other information;

      (3)     Cooperate with us in the investigation, or settlement of the claim or defense against the "suit;" and

      (4)     Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

    d.   No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

*Id.* ¶ 37.  The excess policy is subject to the same terms, conditions, and exclusions.

After Shelton became aware of Claimants' lawsuit in April 2018, she did not review the Policy, contact her insurance broker, or take any steps to determine whether any insurance might apply.  Shelton learned from her attorney in the underlying lawsuit that she might have coverage. Shelton then provided Cambridge Mutual notice of the lawsuit on September 20, 2019.

4

Cambridge Mutual did not have prior notice of the suit. Cambridge Mutual filed this action for a declaratory judgment about a month later. Not long after, in mid-November 2019, Claimants filed a second amended complaint in the underlying lawsuit, alleging for the first time that Shelton's conduct against Iwanicki related to Shelton's rental business. In February 2020, the Circuit Court of Cook County entered a consent judgment against Shelton in the amount of $1.3 million dollars.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine dispute of material fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, documents, answers to interrogatories, admissions, stipulations, and affidavits or declarations that are part of the record. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013). However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th

Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture,'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted).

## ANALYSIS

Cambridge Mutual makes three arguments for summary judgment. First, it contends that the Policy does not cover the harassment claims because Shelton's actions occurred after Iwanicki quit and do not relate to Shelton's rental business. Alternatively, Cambridge Mutual argues that, should the Court find that Shelton's actions relate to her rental business, the employment-related practices exclusion bars coverage. Finally, Cambridge Mutual asserts that Shelton failed to comply with the Policy's notice provision, which is a valid condition precedent to coverage. Because the notice provision issue is dispositive, the Court does not examine Cambridge Mutual's additional substantive coverage arguments.

The parties agree that Illinois law applies to this insurance contract. Notice provisions in insurance contracts are reasonable conditions precedent to coverage. *State Auto Prop. & Cas. Co. v. Brumit Servs., Inc.*, 877 F.3d 355, 357 (7th Cir. 2017). An insured's failure to timely notify the insurance company under the terms of a policy "absolves the insurance company of any obligation to defend or indemnify the insured." *Id.* When determining whether an insured has provided reasonable notice, the Court considers the following five factors: (1) the specific language of the notice provision; (2) the insured's sophistication regarding insurance and commerce; (3) the insured's awareness of the event that might trigger coverage; (4) the insured's diligence in investigating potential coverage; and (5) prejudice to the insurer. *W. Am. Ins. Co. v. Yorkville Nat'l Bank*, 238 Ill. 2d 177, 185–86 (Ill. 2010). No one factor is dispositive, and the insurer need not prove prejudice to prevail. *Brumit*, 877 F.3d at 358 (citing *Country Mut. Ins.*

*Co. v. Livorsi Marine, Inc.*, 222 Ill. 2d 303, 317 (Ill. 2006)). "The reasonableness of notice is a question of law on undisputed material facts." *Moje v. Fed. Hockey League, LLC*, 377 F. Supp. 3d 907, 921 (N.D. Ill. 2019) (collecting cases).

The parties agree that the first factor, the Policy's language, requires notice "as soon as practicable" of an "occurrence" that may result in a claim and to "immediately" send copies of any legal documents received. Doc. 75-2 ¶ 37. Although Shelton learned of the Iwanickis' lawsuit in April 2018 and waived service of the complaint in July 2018, she did not send Cambridge Mutual notice until September 2019, over a year and a half later. Shelton argues that the Court should simply disregard the Policy's language because it does not give a specific timeframe. However, as in *Moje*, 377 F. Supp. 3d at 917, the language of the notice provision is mandatory ("you must"), Doc. 75-2 ¶ 37, and courts routinely consider language such as this when analyzing reasonableness under the *Yorkville* factors. *See Westport Ins. Corp. v. Sycamore Cmty. Unit Sch. Dist. #427*, 555 F. Supp. 3d 550, 560 (N.D. Ill. 2021) (finding non-specific notice provision was designed to allow the insurer reasonable notice to investigate); *Landmark Am. Ins. Co. v. Deerfield Constr., Inc.*, No. 15 C 1785, 2018 WL 2072858, at *10 (N.D. Ill. May 3, 2018) (finding five years was not "prompt" notice). Thus, this factor weighs against Shelton. *See Brumit*, 877 F.3d at 358 (21-month delay unreasonable); *Northbrook Prop. & Cas. Ins. Co. v. Applied Sys., Inc.*, 313 Ill. App. 3d 457, 469 (Ill. App. Ct. 2000) (17-month delay unreasonable).

The second factor, Shelton's sophistication in business and insurance matters, is neutral. Despite owning a rental property business and purchasing various insurance policies throughout the years, Shelton's position is that she had no experience in insurance matters and that she never read the Policy and did not know its terms. Shelton took two years of college coursework, which

included business classes, and worked as an assistant to an executive until her retirement around twenty-five years ago. While courts generally assume that an insured is sophisticated enough to understand her automobile insurance policy, a commercial general liability policy—like this one—is more complex. *Moje*, 377 F. Supp. 3d at 918. Yet Shelton's failure to even read the Policy, despite having previously filed a claim on a homeowner's insurance policy, "could reasonably be viewed unfavorably to [her] as burying [her] head in the proverbial sand." *Id.* And Shelton waived service of the underlying lawsuit complaint in July 2018 (over a year before she notified Cambridge Mutual) and was represented by counsel, both of which support the reasonable inference that she could understand her obligations under the Policy. *See Towne Place Condo. Assoc. v. Phila. Indem. Ins. Co.*, No. 17 C 1561, 2019 WL 3287837, at *6 (N.D. Ill. July 22, 2019) ("The expertise of an insured's third-party advisors further bolsters the insured's sophistication. Access to counsel[,] in particular[,] is a hallmark of sophistication[.]"). On balance, the Court finds this factor is neutral.

The third factor—Shelton's awareness of the event that might trigger coverage—weighs heavily against Shelton. The parties do not dispute that Shelton received notice of the lawsuit in April 2018 and waived service of the complaint in July 2018. Shelton now argues that she did not provide notice before September 2019 because she did not believe the Policy would cover the Iwanickis' claims and that this belief should excuse her delay. This assertion is belied by the fact that Shelton provided notice *before* the Iwanickis filed the November 2019 second amended complaint, which the parties agree alleged for the first time that Shelton's conduct related to her rental business. Also, Shelton received written notice of the lawsuit in April 2018. This is not a case where an individual did not appreciate the severity of an accident, for instance, and therefore did not understand that a lawsuit would likely follow. *See Berglind v. Paintball Bus.*

8

*Ass'n*, 402 Ill. App. 3d 76, 89 (Ill. App. Ct. 2010) (failure to appreciate that accident would result in lawsuit and claim on insurance was reasonable as a matter of law).  Shelton knew of a lawsuit brought by her former employee, yet she did not notify her business insurer for over a year.

The fourth factor, the insured's diligence in investigating potential coverage, also weighs against Shelton.  She admits that she took no steps to determine whether the Policy might provide coverage and did not even read the Policy or call her insurance broker.  She was represented by counsel in the underlying lawsuit who, eventually, recommended that she notify Cambridge Mutual.  Shelton now argues that she did not believe the Policy provided coverage, despite also asserting that she never read the Policy.  Shelton may not have seen the Policy before the Iwanickis filed the lawsuit; however, she was aware of the Policy and had access to counsel after the Iwanickis filed the lawsuit who could have advised her about the potential for coverage.  The Court cannot say that she was reasonably diligent under this factor.  *Applied Sys.*, 313 Ill. App. 3d at 467 (failure to evaluate complaint against policy provisions unreasonable as a matter of law).

Finally, the fifth factor, prejudice to the insurer, also weighs against Shelton.  Because of the delay, Cambridge Mutual could not conduct its own investigation or participate in the underlying lawsuit, which resulted in a $1.3 million dollar consent judgement.  This is sufficient prejudice for this factor.  *Brumit*, 877 F.3d at 362 (lack of timely notice exposed the insurer "to significant uncertainty and deprived it of the benefit it expected to receive from the notice provision"); *Moje*, 377 F. Supp. 3d at 921 ("The point of notice provisions–the benefit for which the insurer bargains–is to afford the insurer the opportunity to do its own investigation in a timely fashion.  Because [defendants] did not comply with the notice provision, '[W]e will never know. That is the problem.'" (internal quotation marks omitted) (citation omitted)).

9

In sum, the balance of factors weighs against Shelton. The Court finds that her failure to timely notify Cambridge Mutual of the underlying lawsuit was not reasonable and thus, Cambridge Mutual has no duty to defend or indemnify Shelton in the underlying lawsuit.

## CONCLUSION

For the foregoing reasons, the Court grants Cambridge Mutual's motion for summary judgment [75]. The Court also grants Shelton's motion for leave to file her response brief [83]. The Court enters judgment for Cambridge Mutual and terminates this case.


Dated: August 3, 2022

_____
SARA L. ELLIS
United States District Judge